*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. FIRTH, Minor.

UNPUBLISHED
December 12, 2024
11:55 AM

No. 372020
Midland Circuit Court
Family Division
LC No. 23-005541-NA

Before: GADOLA, C.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

In this expedited appeal,[1] respondent-mother[2] appeals as of right an order terminating her parental rights to her minor child, LF, under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions), (c)(*ii*) (other conditions were not rectified), and (j) (reasonable likelihood of harm if returned to parent). On appeal, respondent argues that the trial court clearly erred in terminating her parental rights because the record evidence did not satisfy the relevant statutory grounds, and because termination was not in LF's best interests. We affirm.

## I. FACTUAL BACKGROUND

Respondent has anxiety, depression, a moderate cognitive impairment, and an adjustment disorder. Her only child, LF, was born with a number of rare, serious medical conditions that are life threatening, including dysmorphic features, hypoxic ischemic encephalopathy, and megalencephaly polymicrogyria polydactyly hydrocephalus. These disorders affect LF's kidneys, heart, brain, and digestion. She suffers from seizures and has no vision or muscle tone. Likewise, she has a birth defect in her epiglottis which could cause her to aspirate if fed lying down. LF's medical conditions requires 24/7 care, daily medication, and attendance of an average of 30

---

[1] *In re L Firth, Minor*, unpublished order of the Court of Appeals, entered September 16, 2024 (Docket No. 372020).

[2] The parental rights of LF's unknown biological father were also terminated. Accordingly, respondent-mother is referred to as respondent in this opinion.

appointments each month with specialists located across the state. LF is not expected to survive to adulthood.

In September 2023, the Department of Health and Human Services (DHHS) filed a petition requesting the trial court take jurisdiction over LF. The petition alleged that when LF was born, respondent reported to hospital staff that she had limited baby supplies, unstable housing, no employment, and relies on others for transportation. Hospital staff were concerned that respondent did not understand LF's medical needs and could not provide for those needs or her basic needs, such as feeding her or changing her diaper. Hospital staff also reported that respondent did not take her own medication for depression and hypothyroidism. Respondent admitted to these allegations at adjudication and the trial court took jurisdiction over LF. LF was placed with a foster family at seven days old and remained with that family throughout the proceedings.

Through her case service plan, respondent was referred to various services, including Community Mental Health Baby Court, one-on-one parent coaching, a psychological evaluation and referral, and supervised visitation with LF. The case service plan also required respondent to take all of her medications, attend all of LF's medical appointments, maintain safe and suitable housing, attain and maintain employment, and maintain contact with DHHS caseworkers. After more than nine months, respondent only partially complied with her service plan and showed no benefits.

The DHHS filed a supplemental permanent custody petition, which was authorized by the trial court. Following a combined termination of parental rights and best-interest hearing, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j) and concluded that termination served LF's best interests. Accordingly, the trial court entered an order terminating respondent's parental rights to LF pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). This appeal followed.

## II. STANDARD OF REVIEW

To terminate parental rights, a trial court must find by clear and convincing evidence a statutory ground warranting termination. *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020). The trial court's findings and rulings regarding statutory grounds are reviewed for clear error. *Id*. "A finding . . . is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed. . . ." *Id*. (quotation marks and citation omitted; ellipses in original). Further, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*. (quotation marks and citations omitted). Whether termination of parental rights is in a child's best interests must be established by a preponderance of evidence. *Id*. The trial court's findings and ruling that termination serves the child's best interests are also reviewed for clear error. *Id*.

## III. STATUTORY GROUNDS

Respondent argues that petitioner presented insufficient evidence for the trial court to terminate her parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). Because at least one statutory ground supports termination, we disagree.

Under MCL 712A.19b(3)(c)(*i*), the trial court may terminate respondent's parental rights if clear and convincing evidence established the following:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

This statutory ground addresses a situation in which "the conditions that brought the child[] into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services . . . ." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) (quotation marks and citation omitted).

Respondent does not contest that 182 or more days have elapsed since the issuance of an initial dispositional order in this case. However, respondent contends that she made progress toward the conditions that led to adjudication and she was not given enough time to proceed through her case service plan.

The evidence presented to the trial court in this case adequately supported the trial court's findings regarding MCL 712A.19b(3)(c)(*i*). The primary conditions that led to adjudication in this case were respondent's inability to recognize the seriousness of LF's medical conditions and her inability to properly take care of LF. Other conditions included respondent's lack of suitable housing, employment, and transportation. Respondent was ordered to comply with a case service plan, which she partially completed, to rectify these issues. However, she did not benefit from these services.

Respondent was offered numerous services to help her understand the severity of LF's medical conditions and to learn how to care for both LF's basic and medical needs. Despite these services, respondent did not learn to care for LF and demonstrated that she did not understand her medical needs after nine months of services. Although respondent attended each parenting time session, she required assistance with basic tasks, such as holding LF, preparing a bottle, feeding her, and changing her diaper. She did not recognize cues from LF when she needed something and struggled to hold LF. She never demonstrated that she could perform these tasks independently and the caseworkers ultimately provided this care during parenting time.

LF's medical conditions necessitated care around the clock and an average of 30 medical appointments a month. Respondent was ordered to attend each of these appointments. However, respondent only attended appointments for which her caseworkers arranged transportation and often was not home when her caseworkers came to pick her up. Despite being advised of the availability of transportation, respondent never arranged for her caseworkers to take her to appointments on her own. Given the severity of LF's medical conditions, participation in these appointments was critical to understand and care for LF. Respondent also failed to take her own medication despite being ordered to do so. Her inability to remember her own medications raised

concerns that respondent would not be able to administer the various medications LF required correctly. LF took at least one medication, that if administered incorrectly, could be fatal.

As reported by her service providers, respondent generally focused on herself rather than LF. For example, respondent frequently made inappropriate comments in front of LF and caseworkers. She expressed belief that LF cried for attention. She consistently discussed her anxieties, LF's death, her concerns that LF would beat her up when she got older, and comments about LF's virginity and sex offenders during parenting time. Respondent did not interact with LF without prompting by caseworkers and would return to talking about herself after being prompted. Moreover, when discussing LF's medical conditions, respondent would state that LF would need medication for the rest of her life and had "brain stuff" going on, but failed to understand that the severity of LF's birth defects would require extensive care throughout her life.

In addition to concerns regarding parenting skills, respondent was highly dependent on her male partners and often involved herself in abusive relationships with men who used substances or had extensive criminal histories. She could not administer her own finances, required a payee to make medical decisions, and was impaired in decision-making regarding safe partners and competent housing. Dr. Lynn Simons, a psychologist who testified as an expert at the termination hearing, opined that respondent had "significant difficulty in parenting values and parenting knowledge and incapacity to take those values and knowledge put them into parenting behavior." Dr. Simons also opined that respondent had a very poor prognosis of mastering those skills. After a second psychological evaluation in June 2024, Dr. Simons concluded that respondent made no progress in her ability to regulate her emotions and presented a high risk of child abuse toward LF. Dr. Simons also concluded that respondent could not take care of herself. Respondent's failure to develop these skills presented a risk to LF's mental and physical well-being.

Despite this evidence, respondent asserts that the trial court should have given more weight to the testimony of Alexandra Rajewski, who testified at a May 2024 dispositional hearing. Rajewski is an infant mental health and Baby Court therapist who worked with respondent and LF since October 2023. She testified that respondent made significant emotional progress and did not agree with the goal change to adoption at the time of that hearing. Instead, she advocated for implementing a support system for respondent and suggested that respondent's smell alone was an asset to LF. The trial court considered Rajewski's testimony in its order terminating respondent's parental rights and determined that Rajewski could not support her conclusions upon further questioning. Rajewski even agreed that respondent could not be left alone with LF without placing LF at significant risk. The trial court emphasized that Rajewski knew little about LF's medical conditions. The trial court's decision to disregard Rajewski's testimony was a credibility determination that we decline to address anew on appeal. See *In re Mota*, 334 Mich App at 320.

Respondent also asserts that not enough consideration was given to LF's placement in a supported living situation with respondent. However, the trial court expressly considered this option and deemed it unfeasible. Dr. Simons testified that respondent would require 24/7 supervision in order to care for LF. Respondent did not have people in her life capable of providing such a support network. Moreover, Dr. Simons explained that the support network would be for respondent and not LF. Even if it were feasible, such a structure would be counterproductive because the rotation of support persons would stunt bonding between LF and respondent. Given

the record evidence, the trial court gave the possibility of a supported living situation sufficient consideration and its decision to disregard the option was not clearly erroneous. See *id*.

Ultimately, LF required daily medical assistance to stay alive. The record evidence established that respondent did not understand the severity of LF's medical conditions and did not develop the skills to care for LF's basic needs, let alone her extensive medical needs at the time of the termination hearing. This presented a high risk to LF's safety and well-being. Likewise, respondent does not dispute that she still lacked proper housing and transportation at the time of termination. Given respondent's failure to benefit from the few services that she complied with throughout the approximately 10 months of proceedings, respondent's caseworker did not believe that respondent would participate in services and rectify the conditions that led to adjudication if given additional time. Therefore, the trial court did not clearly err by concluding that there was no reasonable likelihood that respondent would rectify the conditions that led to adjudication within a reasonable time. See MCL 712A.19b(3)(c)(*i*).[3]

## IV. BEST INTERESTS

Respondent argues the trial court clearly erred when it terminated her parental rights to LF because she has a bond with LF and was complying with her case service plan. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "The trial court should weigh all the evidence available to determine [a] child[]'s best interests." *In re White*, 303 Mich App at 713. The court's focus must be on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013).

In making its determination, the trial court should weigh all of the evidence available to it and may consider the following:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Atchley*, 341 Mich App 332, 346-347; 990 NW2d 685 (2022), quoting *In re*

---

[3] Because only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, we need not address respondent's arguments regarding MCL 712A.19b(3)(c)(*ii*) and (j). See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Nevertheless, we note that the evidence presented at trial adequately supported the trial court's findings regarding MCL 712A.19b(3)(j). However, the same cannot be said regarding MCL 712A.19b(3)(c)(*ii*). The record does not show there were additional conditions that arose after LF came into the trial court's jurisdiction that respondent was recommended she rectify. Neither the trial court in its written opinion, nor petitioner in its appellate brief, could point to any such additional conditions.

> *Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation
> marks and citation omitted).]

When making its best-interest determination, the trial court may rely upon evidence in the entire record, including the evidence establishing the statutory grounds for termination. *In re Trejo*, 462 Mich 341, 353-354; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

A preponderance of the evidence in the record supports the trial court's decision that termination served LF's best interests. Although respondent contends that she had a bond with LF, the trial court's determination that LF did not have an appreciable bond with respondent was not clearly erroneous. See *In re Mota*, 334 Mich App at 320. Record evidence showed that respondent loved LF; however, LF and respondent had little interaction with each other since LF's birth. During parenting time, LF did not often react to respondent's presence, but would coo and smile at her caseworkers and foster family. Accordingly, LF and respondent did not share a bond.

The other factors considered by the trial court weighed in favor of termination. As previously discussed, respondent did not show adequate parenting skills, did not understand how to care for LF's medical needs, and did not learn how to care for LF. Likewise, respondent did not have adequate housing or transportation to care for a medically fragile child or take her to her numerous appointments. Given respondent's failure to comply with and benefit from her case service plan, there was no indication that respondent would remedy these barriers and be able to care for LF medically. In contrast, LF's foster family offers her the permanency, stability, and finality that LF needs as a medically fragile child. Since she was seven days old, LF lived with the same foster family. She is bonded with that family, and they are willing to adopt her. Her foster family understands and cares for her extensive medical conditions. We do not have a definite and firm conviction that the trial court erred when it concluded that it was proven by a preponderance of the evidence that terminating respondent's parental rights would be in LF's interests. Therefore, the trial court did not clearly err when it held that the termination of respondent's parental rights was in LF's best interests.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ James Robert Redford